Travelers Indemnity Co. v. Deguise, No. S1253-04 CnC  (Norton, J., July 27, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                SUPERIOR COURT
Chittenden County, ss.:                          Docket No. S1253-04 CnC

TRAVELERS INDEMNITY CO.

v.

DEGUISE

ENTRY

Following this court's denial of defendant tenants' motion to dismiss, both parties have moved for summary judgment on plaintiff insurance company's subrogation claim.

This case arises out of a fire and the subsequent damage that it caused to the Northgate apartment buildings.  Insurance company

compensated Northgate for the damages and now steps into Northgate's shoes to seek compensation from tenants, who the insurer holds responsible for the fire.  Tenants do not deny their responsibility but argue that they were the co-beneficiaries of Northgate's insurance policy, and insurance company cannot bring a subrogation claim against a coinsured.  Union Mut. Fire Ins. Co. v. Joerg, 2003 VT 27, ¶6.

When faced with the issue of an owner's insurer bringing a subrogation claim against a tenant, courts have responded in several ways.  As Joerg, notes a minority of jurisdictions have chosen to adopt a per se, default rule.  These courts have adopted the position that a tenant either is or is not a coinsured for the purposes of the owner's fire liability insurance. Compare Sutton v. Jondahl, 532 P.2d 478, 482 (Okla. Ct. App. 1975) (tenant is a coinsured under a landlord's fire insurance as a matter of law), with Neubauer v. Hostetter, 485 N.W.2d 87, 89–90 (Iowa 1992) (tenant is not coinsured as a matter of law); but see Seaco v. Barbosa, 761 N.E.2d 946, 949–50 (Mass. 2002) (criticizing the per se approach).  In both cases, parties to a lease may modify this per se arrangement by including express terms to the contrary in their agreement, but short of such express, and presumably clear, language a court in these jurisdictions will apply the default rule, either granting or refusing co-insured status.

Vermont, through the Joerg case, has adopted a slightly more open position followed by a majority of jurisdictions.  This approach analyzes a tenant's coinsured status on a lease-by-lease basis. Under this method, a court looks to the intent of the parties and their reasonable expectations as ascertained from the lease.  Joerg, at ¶ 8.  The Vermont Supreme Court has noted that jurisdictions applying this analysis tend to deny subrogation claims against tenants when they are based on a specific provision either obligating the landlords to obtain fire insurance or excepting fire damage

from tenant responsibility. Id. ("[M]ost [courts] that have denied subrogation have done so because of the existence of specific provisions in the lease, such as a provision obligating the landlord to purchase fire insurance . . . or a clause excepting fire damage from the tenant's responsibility . . . ."). The converse is that without such a provision, the question of insurance coverage, while open to the language of the lease, is less likely to prohibit subrogation.

This court denied tenants' initial Rule 12(b)(6) motion to dismiss for several reasons, the primary being that tenants' argument was premised on a lease that had not been submitted. See Joerg, at ¶ 11 (centering the determination of coinsured status on what the parties intended and expected from their lease). Both parties have rectified that problem by including a copy of tenants' lease in their respective motions for summary judgment. The question now becomes whether paragraph 28 of tenants' lease, as they argue, makes them coinsured beneficiaries under Northgate's fire insurance policy. Because neither party disputes the content of the lease and because there is no ambiguity in its language, summary judgment is proper on this issue. Rogers v. Wells, 174 Vt. 492, 494 (2002) ("Absent ambiguity, contract interpretation is a matter of law.").

The paragraph in question reads:

Hazards

The Resident shall not undertake, or permit his/her family or guests to undertake any hazardous acts or do anything that will increase the development's insurance premiums. If the unit is damaged by fire, wind, or rain to the extent that the unit cannot be lived in and the damage is not caused or made worse the Resident, the Resident will be responsible for rent only up to the date of the destruction. Additional rent will not accrue until the unit had been repaired to a livable condition.

(Def. Mot. for Summ. J., Ex. A, at 18  Apr. 29, 2005.)  While tenants do not specify which part of paragraph 28 they rely upon, the second and third sentences of this paragraph deal with an issue extrinsic to the present case. See generally Annot., <u>Modern Status of Rule as to Tenant's Rent Liability After Injury to or Destruction of Demised Premises</u>, 99 A.L.R.3d 738 (1980, Supp. 2004).  That leaves the first sentence of the paragraph.  Upon examination, it does not exclude tenants from responsibility for fire damage or obligate owner to purchase insurance, but it does require tenants and their guests to refrain from any activity that will raise owner's insurance premiums.  Tenants argue, however, that this clause is the functional equivalent of an obligation for Northgate to provide fire insurance and vests them with implied coinsured status.

As paragraph 8 of <u>Joerg</u> recommends, this court looks for specific obligations in a lease, which illuminate parties' intent.  These tend to come in two potential forms.  See <u>Joerg</u>, at ¶ 8 (citing cases using surrender clauses or clauses obligating the purchase of insurance).  The first, and overwhelmingly prevalent type, are the so-called surrender clauses where the lease states that the tenant shall surrender the property at the end of the term in good condition, "loss by fire excluded."  See generally Annot., <u>Validity, Construction, and Effect of Provision of Lease Exempting Landlord or Tenant from Liability on Account of Fire</u>, 15 A.L.R.3d 786, § 7 (1968, Supp. 2004).  As this court noted in its earlier entry, surrender clause language has been the almost exclusive basis for any court's denial of subrogation because it prospectively excludes fire damage and implicitly suggests that the tenant's responsibilities are covered.  <u>Id</u>.; see also <u>Parson Mfr. Corp. v. Superior Court</u>, 203 Cal. Rptr. 419, 424 (Cal. App. 1984); <u>United States Fire Ins. Co. v. Phil-Mar Corp.</u>, 139 N.E.2d 330, 332 (Ohio

1956);<u>Rizzuto v. Morris</u>, 592 P.2d 688, 690 (Wash. App. 1979).  Here, tenants are not arguing that paragraph 28 creates such a surrender clause or similar exclusion of responsibility for fire damage.

Instead, tenants expand on the primary holding of <u>Joerg</u> to argue that any mention of an owner's insurance policy in the lease creates reliance in the tenants and a presumption that the costs of such insurance are being passed on to them.  <u>Joerg</u>, at ¶ 11.  This misinterprets the holding of <u>Joerg</u>, which concerns the second form of obligation in a lease that may create coinsured status in the tenant.  The Court in <u>Joerg</u> held that where a lease requires a landlord to carry fire insurance on the leased premises, it implicitly was for the benefit of the tenant; the costs of which were mostly likely passed on to the tenant; and thereby made the tenant a coinsured. <u>Id</u>. at ¶¶ 9–11 (discussing the policy behind <u>Fairchild Square Co. v. Green Mountain Bagel, Inc.</u>, 163 Vt. 433 (1995)). While tenants' argument latches onto the underlying equity arguments in this situation, their position in regards to the lease is different.  Paragraph 28 does not create any obligation in Northgate to carry fire insurance.  Instead, it merely notes that Northgate may have insurance.  It lacks any language that would even imply that the insurance was carried for mutual benefit, and it is not even clear what type of insurance paragraph 28 means.  If any obligation comes out of paragraph 28, it would be for the tenants, whom the paragraph requires to do nothing to raise Northgate's premiums—presumably by refraining from dangerous or destructive activities in the apartment.

Looking elsewhere in the lease, there is a conspicuous lack of any language that would extend coverage to or exclude responsibility from tenants.  In fact, the lease when taken as a whole explicitly prohibits tenants from several broad and enumerated categories of behavior (¶ 10(B)

Maintenance; ¶ 11, Damages; ¶ 13 General Restrictions) and holds them explicitly responsible for any damage resulting (¶ 8, Security Deposit; ¶ 11, Damages). Taken together, there is no language either in paragraph 28 or the lease as a whole to suggest that Northgate was obliged to carry fire insurance for tenants benefit. Nor could tenants have reasonably expected such a benefit from the language of the lease. There is nothing in the lease which would have caused tenants to suspect that they were freed of the responsibility of obtaining their own insurance to cover their property and their own acts of negligence. As such, the lease and paragraph 28 do not give tenants the status of coinsured or prevent insurer from bring its present subrogation claim.

Furthermore, since tenants do not dispute that they caused the fire in their apartment, summary judgment on the claim of negligence is also proper. Tenants were obligated by paragraph 10(B) of their lease to avoid damaging or destroying the premises. Under paragraph 11, they were obligated to repay for any damage resulting from carelessness, misuse, or neglect. On January 6, 2002, tenants negligently caused a fire in their apartment by dumping smoldering material in a trash can. This led to $10,000 in damage their unit and others. Therefore, insurer may recover as a right of subrogation for the damages sustained by Northgate as a result of tenants' negligence.

Based on the foregoing, Plaintiff's motion for summary judgment is Granted. Defendants' motion for summary judgment is Denied.

Dated at Burlington, Vermont_____, 2005.